**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**AGUSTIN MONTAÑEZ-ALLMAN, ET AL.,**

    Plaintiffs,

        v.

**ALEJANDRO GARCIA-PADILLA, ET AL.,**

    Defendants.

CIVIL NO. 13-1683 (PG)

## OPINION AND ORDER

Pending before the court is the unopposed motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Alejandro Garcia-Padilla ("Garcia-Padilla"), Elizabeth Lopez-Cabrera ("Lopez-Cabrera"), Eduardo Bhatia-Gautier ("Bhatia"), and Miguel Pereira-Castillo ("Pereira") (collectively, "Defendants").[1] Docket No. 66. After carefully considering the Defendants' arguments, the court grants the motion for the reasons explained below.

### I. BACKGROUND

Since the facts of this case have been stated in previous decisions, the court only briefly recapitulates them here. See e.g. Docket Nos. 18 and 36.

In March of 2010, former Puerto Rico Governor Luis Fortuño-Burset ("Fortuño"), of the New Progressive Party ("NPP"), appointed Augustin Montañez-Allman ("Montañez" or "Plaintiff") as Veteran's Advocate pursuant to Law No. 57-1987. During Fortuño's administration, the Puerto Rico Legislature enacted Reorganization Plan No. 1-2011, known as the Advocate Office Reorganization Plan ("Plan No. 1"), which consolidated the administrative functions and duties of four existing ombudsmen offices, including the Veteran's, under the Advocate Office Administration ("AOA" or "OAP" for its Spanish acronym). Plan No. 1 created the "Office of the Veteran's Advocate;" vested the Agency's head with rule-making and decision-making authority; established a fixed term of

---

[1] Garcia-Padilla and Lopez filed the motion in their personal and official capacities, while the remaining defendants did so only in their official capacities. See Docket No. 66 at page 1. Co-defendant Col. Hector Lopez has neither joined Defendants' motion nor moved for dismissal of the individual and official capacity claims brought against him in the amended complaint.

appointment for the Advocate position, and placed limitations on the governor's removal power. In June 2011, Fortuño reappointed Montañez as Veteran's Advocate for a ten-year term, to expire in 2021.

After the November 2012 General Elections, Garcia-Padilla, of the Popular Democratic Party ("PDP"), became governor. In July of 2013, the Legislature enacted Law 75-2013 ("Law 75") and Law No. 79-2013 ("Law 79").[2] The former repealed Plan No. 1, and the latter purported to create a new VA Office, now called the "Office of the Veterans Advocate of the Commonwealth of Puerto Rico."[3] The second amended complaint states that the new Advocate position was undistinguishable to that supposedly eliminated: the governor's pick would have nearly identical functions, duties and responsibilities, enjoy similar privileges and remain term-limited. See Docket No. 12 at ¶¶ 23-26.

Plaintiff alleges that in August of 2013, he received several letters from Garcia-Padilla pertaining to the transition process between the "extinct" VA Office and the "new" one. Id. at ¶¶ 31-35. During this time, Plaintiff worked on the transition alongside members of Garcia-Padilla's Transition Committee. Id. at ¶¶ 31-35. Apparently, he was never advised of his imminent removal. Id. However, on August 28, 2013, Plaintiff received written notice of co-defendant Lopez-Cabrera's appointment as Acting Veteran's Advocate under Law 79. See id. at ¶ 38. On that same date, Garcia-Padilla's Chief of Staff, Ingrid Vila, asked Montañez to surrender control of the VA Office. The instant action soon followed.

## Procedural Background

On October 6, 2013, Montañez filed the second amended complaint (or the "amended complaint") against Garcia-Padilla and other PDP Defendants alleging violations of his rights under the First, Fifth and Fourteenth Amendments to the United States Constitution and Puerto Rico law. See Docket No. 12. Montañez's wife and their children joined as plaintiffs for purposes of the state law claims. See id. at 2. The complaint included a preliminary injunction request, which the court granted on Fourteenth Amendment grounds. See Docket No. 36. Defendants appealed. On April 1, 2015, the First Circuit Court of Appeals

---

[2] As noted in previous decisions, Law 75 established a thirty-day transition period during which the AOA's resources would be transferred to the different ombudsmen offices under the advice of the Office of Management and Budget ("OGP" for its Spanish acronym).

[3] Given the statutory name changes made to the Office of the Veteran's Advocate and to the ombudsman position itself, for ease of reference, the court will use the term "VA Office" when referring to the employing agency, and "Advocate" when referring to the agency's director.

remanded the case with instructions to vacate the preliminary injunction so that Plaintiff could file suit in Puerto Rico court. See Montanez-Allman v. Garcia-Padilla, 782 F.3d 42, 46 (1st Cir. 2015). The First Circuit explained that in light of the Puerto Rico Supreme Court's opinion in Díaz-Carrasquillo v. García-Padilla, 2014 TSPR 75, 2014 WL 3013335 (P.R. 2014) (certified translation provided by the court), Plaintiff would not suffer irreparable injury if denied federal injunctive relief. See Montanez-Allman, 782 F.3d at 45-46. On April 28, 2015, this court dismissed the Fourteenth Amendment claims.[4] See Dockets Nos. 56 and 57.

### The Pending Claims

Mainly, Plaintiff alleges that Defendants conspired among themselves to deprive him of his civil rights under 42 U.S.C. §§ 1983 and 1985 by removing him from the Advocate post solely because of his political affiliation to the NPP. See Docket No. 12 at ¶¶ 49 and 54. Defendants move for dismissal of the amended complaint in its entirety under Rule 12(b)(6). See Docket No. 66. Defendants mostly argue that Plaintiff's claim fails because political affiliation is an appropriate requirement for the Advocate position. Id. at 11-16. In addition, Defendants (save for Col. Lopez) have raised official, qualified, absolute or Eleventh Amendment immunity.[5] Id. at 27-34.

Against this background, the court parses the legal standard applicable to the matter at hand.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Garcia-Catalan v. U.S., 734 F.3d 100, 102 (1st Cir. 2013) (quoting FED.R.CIV.P. 8(a)(2)). When ruling on a motion to dismiss under this rule, the court must "ask 'whether the complaint "states a claim to relief that is plausible on its face," accepting the plaintiff's factual allegations and drawing all reasonable inferences in the

---

[4] Although Plaintiff has kept mum as to the success of his state court endeavors, the court is aware that Montañez was reinstated to the Advocate position.
[5] Lopez-Cabrera and Garcia-Padilla raise qualified and Eleventh Amendment immunity. Garcia-Padilla also raises official immunity. Bhatia and Gautier raise absolute immunity.

plaintiff's favor.'" Cooper v. Charter Communications Entertainments I, LLC, 760 F.3d 103, 106 (1st Cir. 2014) (citing Maloy v. Ballori–Lage, 744 F.3d 250, 252 (1st Cir. 2014)). The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

"To cross the plausibility threshold, the plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).

In deciding a motion to dismiss, courts employ a two-pronged analysis. First, we identify and disregard statements in the complaint that consist of legal conclusions couched as facts. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 679); see also Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009) (citing Iqbal, 556 U.S. at 678) (court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement"). Then, all the "[n]on-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 681). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 664-664.

### III. DISCUSSION

**A. Section 1983**

In the instant case, Montañez's federal claims are based on Section 1983, which "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982) (quoting

42 U.S.C. § 1983). Moreover, "Section 1983 is the conventional vehicle through which relief is sought for claims of political discrimination by state actors." Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 92 (1st Cir. 2014) (quoting Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013)).

To prevail in a Section 1983 claim, a plaintiff must plausibly plead three elements: deprivation of a right, a causal connection between the actor and the deprivation, and state action. See 42 U.S.C. § 1983; Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009). To establish the second (or causation) element, plaintiff must sufficiently allege: (1) that the actions of the defendant deprived him or her of a protected right, and (2) "that the defendant's conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights." Concepcion v. Municipality of Gurabo, 558 F. Supp. 2d 149, 162 (D.P.R. 2007). Furthermore, the complaint's allegations must show the link between each particular defendant and the federal right violation. See González–Piña v. Rodríguez, 407 F.3d 425, 432 (1st Cir. 2005). A plaintiff may do so by indicating any "personal action or inaction [by the defendants] within the scope of [their] responsibilities that would make [them] personally answerable in damages under Section 1983." Pinto v. Nettleship, 737 F.2d 130, 133 (1st Cir. 1984).

**B. First Amendment**

*1.    Political Discrimination*

Montañez alleges he was the victim of political discrimination. As we know, the First Amendment "insulates public employees who hold non-policymaking positions from the vicissitudes of personnel decisions rooted in partisan political concerns." Bergeron v. Cabral, 560 F.3d 1, 7 (1st Cir. 2009) (citing Rutan v. Repub. Party of Ill., 497 U.S. 62, 74–76 (1990)). Basically, government officials cannot take adverse employment action based on "a person's political affiliation, 'unless political affiliation is an appropriate requirement for the position.'" Garcia-Gonzalez, 761 F.3d at 92 (quoting Méndez–Aponte v. Bonilla, 645 F.3d 60, 64 (1st Cir. 2011)).

In the motion to dismiss, Defendants adduce that the Veteran's Advocate "is a high ranking political official" with policymaking powers and duties, and therefore, political loyalty is an appropriate consideration for the position. See Docket No. 66 at 12-16. Without the benefit of Plaintiff's response or

opposition, the court must determine whether the position here at issue falls within the exception to the First Amendment's bar on political dismissals recognized in Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980).

In a nutshell, the Elrod-Branti exception invoked by Defendants is "reserved for instances where political affiliation is an appropriate requirement for the effective performance of the public office involved." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004) (quoting Branti, 445 U.S. at 518 (1980)); see also Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 239 (1st Cir. 1986) (en banc) (drawing several propositions in support of the party-affiliation exception). Ultimately, whether political loyalty is an appropriate basis for the challenged action or conduct is a question of law for the court. See Mendez-Aponte v. Bonilla, 645 F.3d 60, 65 (1st Cir. 2011). The First Circuit has developed a two-step approach to make this determination, focusing first on the political nature of the employing agency, and second, on the position at issue and its specific features. See id. (citing Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 132 (1st Cir. 2005) and Hadfield v. McDonough, 407 F.3d 11, 16 (1st Cir. 2005)).

### The Veteran's Advocate Office

The VA Office is the main agency within the Executive Branch in charge of safeguarding the rights of Puerto Rican veterans and their families. It was created for the purpose of advising, assisting and providing comprehensive services to the veteran population, and to that end, the Legislature has conferred upon the VA Office power to process, manage and investigate veterans' claims and obtain benefits on their behalf.[6] See Plan No. 1, Art. 2, 24 (Docket No. 36-1 at 3, 20); Law 79, Art. 4 (Docket No. 34-1 at 2). Among others, the VA

---

[6] Out of an abundance of caution, the court has considered the text of Plan No. 1 and Law 79, as they reflect what the law was at the time of Plaintiff's appointment in June 2011 and his removal in August 2013. In so doing, the court takes note that both laws are sufficiently referred to in the second amended complaint (Docket No. 12), there is no dispute as to the authenticity of the certified translations on record, and alternatively, they are matters susceptible to judicial notice. Accordingly, the court may consider both of them under the Rule 12(b)(6) standard. See Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 37 (1st Cir. 2012) (supplementing the well-pleaded facts found in the complaint with reference to Puerto Rico statutes and facts susceptible to judicial notice in order to place the allegations in context); Berrios-Romero v. Estado Libre Asociado de Puerto Rico, 641 F.3d 24, 27 (1st Cir. 2011)(noting that the court "may take judicial notice of law at any time"); Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009).
The certified translation of Plan No. 1 can be found at Docket No. 36-1, and the certified translation of Law 79, at Docket No. 34-1.

Office has authority to: develop assistance and advisory programs; represent veterans before any administrative, judicial or legislative body; participate in the formulation of public policy; oversee and enforce compliance with applicable laws and regulations; serve as a liaison between veterans and other government agencies; and receive and administer funds (from both public and private sources) to carry out its operations. See Plan No. 1, Art. 24, 26 (Docket No. 36-1 at 20-22); Law 79, Art. 6 (Docket No. 34-1 at 3-4).

Plan No. 1 authorized the Advocate "[t]o adopt the rules and regulations [] needed to implement projects and programs … and discharge the functions expressly delegated to him/her by virtue of th[e] Plan." See Plan No. 1, Art. 27(e) (Docket No. 36-1 at 23). Law 79, on the other hand, delegated similar rulemaking powers to the VA Office. See Law 79, Art. 6(d) (Docket No. 34-1 at 4) (authorizing the VA Office to prepare and recommend legislative measures to the Legislature); Art. 13 (Docket No. 34-1 at 9) (conferring power of regulation to the VA Office in accordance with Law No. 170-1998, as amended known as the "Uniform Administrative Procedure Act of the Commonwealth of Puerto Rico").

The First Circuit has set a low bar for the first prong, stating that it is satisfied as long as the employing agency "handle[s] matters *potentially* subject to partisan political differences…." Galloza, 389 F.3d at 29 (emphasis added) (citing Mendez-Palou v. Rohena-Betancourt, 813 F.2d 1255, 1258 (1st Cir. 1987)). Here, the court finds that the VA Office's functions entail decision-making on issues where there could be room for political disagreement on goals or their implementation. See Jimenez-Fuentes, 807 F.2d at 241–42. In so concluding, the court takes into account the discharging agency's functions, especially those related to the formulation of public policy, the development of government funded programs, and the fact that it provides important (health, legal, technical) services to the veteran population, by itself or in coordination with other government agencies. See e.g. Foote v. Town of Bedford, 642 F.3d 80, 86 (1st Cir. 2011) (holding that town commission was a policymaking body since its main function was to advise the town's legislative branch, had been delegated broad powers related to the formulation and implementation of park policy, and had duty to coordinate recreational activities with other governmental actors).[7]

---

[7] For additional First Circuit cases regarding Puerto Rico or other government agencies that satisfy the first prong of the test, see O'Connell v. Marrero-Recio, 724 F.3d 117, 126 (1st

The Veteran's Advocate Position

For the second element of the test, the court considers the specific features of the Advocate position occupied by Montañez. By statute, the Advocate has authority to adjudicate complaints; conduct investigations and obtain information or evidence relevant to the complaints and all other issues handled by the VA Office; preside over administrative hearings; appear on behalf of veterans and their families in different forums; and enforce or order compliance with the applicable laws and regulations in any case in which a person or entity, public or private, denies or in any way affects their interests, rights and privileges. See Plan No. 1, Art. 27 (Docket No. 36-1 at 22-24); Law 79, Art. 7-10 (Docket No. 34-1 at 4-7). Administratively speaking, the Advocate appoints personnel, and under Law 79, determines the internal organization of the VA Office. See Plan No. 1, Art. 27(d) (Docket No. 36-1 at 22); Law 79, Art. 7(a)-(d) (Docket No. 34-1 at 4-5).

Also, the Advocate has the duty to advise the Governor and the Legislature, so naturally, the individual in that position could potentially influence matters subject to differences of opinions on policy grounds. Taking into account the Advocate's broad investigative, regulatory, and supervisory powers, administrative or managerial-like responsibilities, and involvement in policy, even if only as an implementer or representative, the court finds that the position is one for which political affiliation is an appropriate consideration. See Olmeda v. Ortiz-Quiñones, 434 F.3d 62, 66-67 (1st Cir. 2006) (so holding in case where the plaintiff occupied position within Puerto Rico agency with policy-making functions, at least as an adviser, expected on occasion to serve as a representative of the agency itself); Duriex-Gauthier v. Lopez-Nieves, 274 F.3d 4, 10 (1st Cir. 2001) (holding that the personnel officer in Puerto Rico's Ombudsman's Office was a policymaking position, notwithstanding a number of "technical and administrative" duties); see also Torres Lopez v. Garcia-Padilla, 209 F.Supp. 3d 448, 458-59 (D.P.R. 2016) (holding that chairperson of the Telecommunications Regulatory Board of Puerto Rico had sufficient administrative, discretionary, and policy-making authority to render position one for which political affiliation was an appropriate consideration); Torres-

---

Cir. 2013) (Puerto Rico Permits and Regulation Administration and Puerto Rico Buildings Authority); Mendez-Aponte, 645 F.3d at 65 (Puerto Rico State Department); Rosenberg v. City of Everett, 328 F.3d 12, 18 (1st Cir. 2003) (community television station administered by city government, but funded by private company); Jimenez-Fuentes, 807 F.2d at 244 (Puerto Rico Urban Development and Housing Corporation).

Rivera v. Garcia-Padilla, 156 F.Supp. 3d 237, 242 (D.P.R. 2016) (holding that head of Puerto Rico agency lacked First Amendment protection against political dismissal in light of office-holder's broad discretionary functions in overseeing compliance with statutory policy, hiring personnel, as well as its rule-making authority, notwithstanding quasi-judicial functions performed by agency).[8]

For the foregoing reasons, the court finds that Plaintiff has failed to plausibly state a First Amendment claim of political discrimination. Consequently, that claim is **DISMISSED WITH PREJUDICE**. Having so ruled, the court need not address Defendants' alternative grounds for dismissal, including their claims of official, qualified, absolute or Eleventh Amendment immunity.

*2.  Free Speech*

Montañez advances another First Amendment claim, alleging that Defendants harassed and removed him from the Advocate position as punishment for exercising his right to free speech. See Docket No. 12 at ¶¶ 50, 53. Defendants request dismissal of this claim, arguing that the amended complaint fails to allege Plaintiff indeed spoke out as a citizen on a matter of public concern. See Docket No. 66 at 219-20.

The First Circuit has crafted a three-part test to determine whether a public employee has an actionable free speech claim under the First Amendment. First, a court must ask whether the employee spoke as a citizen on a matter of public concern. See Curran v. Cousins, 509 F.3d 36, 45 (1st Cir. 2007). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Id. (citing Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). After carefully reviewing the amended complaint, the court is convinced that Plaintiff has failed to allege a single instance where

---

[8] In a handful of cases, the First Circuit has "upheld political dismissals of mid- to upper-level employees where the employee 'merely represented the agency's policy positions to other entities or to the public or where important personnel functions were part of the portfolio.'" Mendez-Aponte, 645 F.3d at 65-68 (quoting Flynn v. City of Boston, 140 F.3d 42, 45 (1st Cir. 1998)) (further holding that party affiliation was an appropriate consideration for position of Assistant Secretary of State for Protocol Affairs). See e.g. Mendez-Aponte, 645 F.3d at 67 (Assistant Secretary at Puerto Rico State Department); Foote, 642 F.3d at 86 (municipal recreation commissioner); Uphoff Figueroa v. Alejandro, 597 F.3d 423, 429-30 (1st Cir. 2010) (administrator who developed legal strategy on environmental law issues and cases for the Puerto Rico Electric Power Authority); Ortiz-Pinero v. Rivera-Arroyo, 84 F.3d 7, 11 (1st Cir. 1996) (office of director of federal programs in an agency that obtained and administered federal funding for public works projects).

he spoke out as a citizen on a matter of public concern, period. Accordingly, Plaintiff's free speech claim is **DISMISSED WITH PREJUDICE.**

**C. Civil Rights Conspiracy**

Plaintiff also alleges that Defendants Garcia-Padilla, Lopez-Cabrera and Col. Lopez participated in a civil rights conspiracy to discriminate against him on the basis of political affiliation, in violation of 42 U.S.C. § 1985. See Docket No. 12 at ¶¶ 54-57. Defendants request dismissal of this cause of action as well. See Docket No. 66 at 24-25.

A civil rights conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another,' and 'an overt act that results in damages." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (citation omitted). To plausibly establish a conspiracy claim, a plaintiff must allege not only a conspiratorial agreement, but also an actual abridgment of some federally-secured right. See Rivera–Carrero v. Rey–Hernández, Civil No. 04–1925, 2006 WL 572349, at *2 (D.P.R. 2009) (alteration in original) (citing Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001)).

In this district, conspiracy claims of employment discrimination on the basis of political affiliation are not actionable under Section 1985. See Perez-Sanchez v. Pub. Bldg. Auth., 557 F. Supp. 2d 227, 238–39 (D.P.R. 2007), aff'd sub nom. Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104 (1st Cir. 2008)(citing cases). Accordingly, that claim is, too, **DISMISSED WITH PREJUDICE.**

**D. Supplemental Puerto Rico Law Claims**

The amended complaint (Docket No. 12) includes claims grounded on Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141-5142. Defendants request dismissal of the same. See Docket No. 66 at 25-26.

Having dismissed Montañez's federal claims, and since no other grounds for jurisdiction exist, the court declines to exercise supplemental jurisdiction over the remaining state law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988) (explaining that the exercise of pendent jurisdiction is a matter of the federal court's discretion); United Mine Workers v. Gibbs, 383

U.S. 715, 725 (1966) (stating "if the federal claims are dismissed before trial, …the state law claims should be dismissed as well"). Accordingly, Plaintiffs' claims brought pursuant to Puerto Rico law are hereby **DISMISSED WITHOUT PREJUDICE**.

### IV. CONCLUSION

For the reasons stated above, the court hereby **GRANTS** Defendants' motion to dismiss (Docket No. 66). Accordingly, Montañez's political discrimination and free speech claims under the First Amended are hereby **DISMISSED WITH PREJUDICE.** Plaintiffs' claims brought pursuant to Puerto Rico law are hereby **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, March 26, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**